# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| John Eakin,<br><br>                Plaintiff,<br><br>v.<br><br>United States Department of Defense,<br><br>                Defendant. | Civil Case No. 5:16-cv-00972-RCL |

## MEMORANDUM OPINION

Before the Court are plaintiff's Motion for Summary Judgment, filed January 24, 2017, and defendant's Cross-Motion for Summary Judgment, filed June 1, 2017. Having considered the motion, responses, replies, exhibits, filings, and applicable law, the Court will deny the defendant's Cross-Motion for Summary Judgment. The Court will also grant the plaintiff's Motion for Summary Judgment in-part, and deny it in-part. Finally, the Court will grant the defendant's Motion in the Alternative for an *Open America* Stay.

## I. BACKGROUND

This case is a follow-up to a 2010 FOIA case. Plaintiff John Eakin previously submitted FOIA requests to the Department of Defense (DoD) regarding documents and personnel files for unidentified American service members and civil employees who were held in Japanese POW camps in the Philippines during World War II. *Eakin v. United States Department of Defense et al.*, Cause No. 5:10-cv-784-FB (W.D. Tex. Jan. 23, 2012). Eakin specifically requested Individual Deceased Personnel Files (IDPF's) for all American service members or civilian employees whose remains were not recovered or identified, as well as "X-Files" pertaining to unidentified remains

1

at specific POW camps and cemeteries in the Philippines.[1] In that case, the government argued that Eakin's request was not entitled to a fee waiver or expedited processing, and also that the request imposed an unreasonable burden and that the government should be excused from responding. Cause No. 10-cv-784, ECF No. 25. Magistrate Judge Nancy Nowak found that Eakin was not entitled to a fee waiver or expedited processing but did not reach the unreasonableness argument because it was not raised in the underlying administrative proceeding. Cause No. 5:10-cv-784-FB, 2011 WL 5925570, at * 8 (W.D. Tex. Nov. 28, 2011). Judge Biery adopted the Report and Recommendation and granted the government's motion for summary judgment. ECF No. 46. The case was dismissed in 2012.

Years later, on May 10, 2016, Eakin filed the relevant FOIA request here. He sought "Electronic (digital) copies of all World War II era Individual Deceased Personnel Files (IDPFs) a/k/a 293 files and/or 'X-files' which exist in any digital or electronic format," as well as accompanying indices or documents necessary to access the IDPFs. Compl. 8, ECF No. 1. The next day, May 11, 2016, Eakin filed a second FOIA request, seeking "All contracts, contract amendments/modifications, and similar documents pertaining to contracts for digital scanning of U.S. Army [IDPFs] previously stored at National Archives and Records Administration (NARA)," as well as documents which identify the users/agencies which have access to IDPFs. *Id.* at 10. DoD notified plaintiff that each request had been received and that DoD would be unable to respond to the requests within the statutorily allotted 20-day period. *Id.* at 7, 12. According to DoD, Eakin's "unusual circumstances" of the requests affected the ability to process the request quickly. *Id.* "These unusual circumstances are: (a) the need to search for and collect records from

---

[1] "X-Files" refers to documents created by the American Graves Registration Service regarding unidentified remains, including the condition and location of the remains, personal effects found with remains, wreckage or hardware found near the remains, and details about the burial, re-burial, and recovery of the remains.

2

a facility geographically separated from this Office; (b) the potential volume of records responsive to your request; and (c) the need for consultation with one or more other agencies or DoD components having a substantial interest in either the determination or the subject matter of the records." *Id.* DoD placed Eakin's requests in a "complex processing queue" to be worked in the order the request was received. *Id.* The queue apparently included over 1,600 other open requests. *Id.* Both letters included instructions on Eakin's right to appeal the decision to DoD's Office of the Deputy Chief Management Officer Directorate for Oversight and Compliance, which is responsible for DoD's FOIA policy. *Id.*

On May 23, 2016, Eakin submitted his appeal regarding DoD's decision not to comply with the 20-day response time. Compl. 14. According to Eakin, DoD failed to respond and his appeal was constructively denied. *Id.* at 3 On September 30, 2016, plaintiff Eakin filed this action alleging that DoD's failure to respond to the appeal or produce the records or demonstrate an exemption is a violation of FOIA, 5 U.S.C. § 552. *Id.* at 3–4. DoD filed its answer on November 1, 2016. ECF No. 8. In its answer, DoD claimed "some" documents were exempt under one of the enumerated FOIA exemptions and that DoD is entitled to a stay under the *Open America* doctrine based on the volume of FOIA requests from Eakin. *Id.*

On January 24, 2017, Eakin filed a Motion for Summary Judgment, ECF No. 16, arguing that because the requested documents are not exempt that the Court should compel their production. On June 1, 2017, DoD filed a joint Response and Cross-Motion for Summary Judgment. ECF No. 22.[2] In its cross-motion, DoD claimed that after receiving Eakin's request, the Defense POW/MIA Accounting Agency (DPAA) and the Army Human Resources Command (AHRC) FOIA Office had been coordinating a response, but that the review of the responsive

---

[2] Defendant DoD had requested a 120-day extension of time to respond to the motion for summary judgment, ECF No. 17, which this Court granted.

documents was not yet complete. Specifically, DoD submitted affidavit testimony from the Chief of AHRC that three of AHRC's eight FOIA Action Officers were assigned to work one hour per day to remove recently-created documents from the IDPF's, such as other FOIA requests, correspondence, and medical information such as DNA data on related individuals. Ex. 1, ECF No. 22-2. According to DoD, this review involves three hard drives containing approximately 280,000 IDPF's and 4.2 terabytes of data. *Id.* Manual review is necessary to prevent possible disclosure of Personally Identifiable Information, which is exempt from disclosure under Exemptions 6 and 7(c) of FOIA. 5 U.S.C. §§ 552(b)(6)-(7).

DoD argues that the time, expense, and effort required to process the IDPF's for a response constitutes an unreasonable burden under FOIA. In the alternative, DoD requests that the Court grant an *Open America* stay to extend the timeline over which FOIA compels the DoD to produce responsive documents.

On June 7, 2017, Eakin filed a response to DoD's cross-motion reiterating that DoD had failed to identify any exemption that would justify nondisclosure of the requested documents. ECF No. 24. Further, Eakin argues that the request is not unreasonably burdensome because DoD knows exactly where the records are and which records are being requested. Eakin also argues that an *Open America* stay is not applicable because DoD has failed to show that "exceptional circumstances" exist under 5 U.S.C. 552(a)(6)(C)(i)-(iii).

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

4

56(a). The main purpose of summary judgment is to dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Id.* at 323. If the moving party meets this burden, the non-moving party must come forward with specific facts that establish the existence of a genuine issue for trial. *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012). The function of summary judgment is to allow for parties to preempt litigation by demonstrating that "one or more of the essential elements of a claim or defense before the court is not in doubt and that, as a result, judgment should be entered on the basis of purely legal considerations." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In deciding whether a fact issue exists, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving part, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 389 (1968)).

**B.     FOIA**

"FOIA affords the public access to virtually any federal government record that FOIA itself does not specifically exempt from disclosure." *Jarvik v. CIA*, 741 F. Supp. 2d 106, 113 (D.D.C. 2010) (citing 5 U.S.C. §552; *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973)). Under FOIA, federal district courts have jurisdiction to order the release of improperly withheld or redacted information. 5 U.S.C. § 552(a)(4)(B). Under the statute, agencies must respond within 20 days

5

of receiving a FOIA request. 5 U.S.C. § 552(a)(6)(A). This 20-day deadline may be extended by up to 10 days under "unusual circumstances." 5 U.S.C. § 552(a)(6)(B)(i).

"Unusual circumstances" are defined to encompass only "the need to search for and collect the requested records" from separate locations; "the need to search for, collect, and appropriately examine a voluminous amount" of documents; and "the need for consultation" with other agencies. *Id.* § 552(a)(6)(B)(iii). In the event that more than 10 days are needed, the agency must notify the requester in writing and provide an opportunity to limit the scope of the request so that it may be processed within that time limit, or provide an opportunity to arrange for an alternative time frame to process the request (or modified request). *Id.* § 552(a)(6)(B)(ii). Critically, however, "[t]he statutory list of circumstances that permit an agency to extend the 20–working–day timeline to make a 'determination,' including collecting and examining numerous or distant documents, clearly contemplates that the agency must actually gather the responsive documents and determine which it will produce and which it will withhold." *Citizens for Responsibility and Ethics in Washington v. Federal Election Commission*, 711 F.3d 180, 188-89 (D.C. Cir. 2013). "The agency cannot make the requisite 'determination' by simply stating its future intent to produce some non-exempt documents." *Id.*

In the case of adverse determinations, FOIA provides the right to appeal to the head of the responding agency, and such agency shall make a determination within 20 days after receipt of the appeal. 5 U.S.C § 552(a)(6)(A)(i)-(ii). In the event an appeal is denied, FOIA provides for judicial review of the government's decisions to deny document production and allows district courts to order the production of agency records improperly withheld. 5 U.S.C. § 552(a)(4)(B). FOIA requires a plaintiff to exhaust his administrative remedies prior to filing a FOIA lawsuit. Generally, a plaintiff has exhausted his administrative remedies by filing an appeal, but a person

6

shall be deemed to have exhausted his administrative remedies if the agency fails to comply with the applicable time limit provisions. *Id.* § 552(a)(6)(C)(i).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)). In considering a motion for summary judgment under FOIA, the court must conduct a *de novo* review of the record. 5 U.S.C. § 552(a)(4)(B). The defendant agency has the burden of justifying nondisclosure. *Id.*

### 1. **Unreasonable Burden**

Under FOIA, requesters must "reasonably describe" the records they seek, 5 U.S.C. 552(a)(3)(A), and agencies must make "reasonable efforts" to search for such records, 5 U.S.C. § 552(a)(3)(C). "Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt [under FOIA]." 5 U.S.C. § 552(b). Thus, an agency must take reasonable steps to respond to a request, but FOIA does not require a response where responding would unreasonably burden the agency. *See Halpern v. FBI*, 181 F.3d 279, 288 (2d Cir. 1999); *Lead Industries Ass'n v. OSHA*, 610 F.2d 70, 86 (2d Cir. 1979). The requester has a "responsibility to frame requests with sufficient particularity to ensure that searches are not unreasonably burdensome." *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 27 (D.D.C. 2000) (quoting *Assassination Archives and Research Center, Inc. v. CIA*, 720 F. Supp. 217, 219 (D.D.C. 1989)).

### 2. *Open America* **Stay**

As noted, a government agency generally must respond to a FOIA request within 20 days. "If the Government can show exceptional circumstances exist and that the agency is exercising

due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records." 5 U.S.C. § 552(a)(6)(C)(i).

Exceptional circumstances are said to exist under the following conditions:

> [W]hen an agency . . . is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it "is exercising due diligence" in processing the requests. In such situation, in the language of subsection (6)(c), "the court may retain jurisdiction and allow the agency additional time to complete its review of the records." Under the circumstances defined above the time limits prescribed by Congress in subsection (6)(A) become not mandatory but directory. The good faith effort and due diligence of the agency to comply with all lawfully demands under the Freedom of Information Act in as short a time as is possible by assigning all requests on a first-in, first-out basis, except those where exceptional need or urgency is shown, is compliance with the Act.

*Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976).

Courts evaluate four conditions that must be satisfied to warrant granting an *Open America* stay: (1) the agency must be burdened with an unanticipated number of FOIA requests; (2) the agency's resources are inadequate to process the requests within the time limits set forth in the statute; (3) the agency must show that it is exercising due diligence in processing the requests; and (4) the agency must show reasonable progress in reducing its backlog of requests. *See Elec. Frontier Found. v. Dept. of Justice*, 563 F. Supp. 2d 188, 193 (D.C. Cir. 2008); *Summers v. Dept. of Justice*, 925 F.2d 450, 452 n.2 (D.C. Cir. 1991) (noting the first three factors); 5 U.S.C. § 552(a)(6)(C)(ii) ("[T]he term 'exceptional circumstances' does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests.").

Agency affidavits and declarations in support of an *Open America* Stay are evaluated under "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Nat'l Sec. Archive v. S.E.C.*, 770 F. Supp.2d 6, 9 (D.D.C. 2011) (*quoting Elec. Frontier Found. v. Dept. of Justice*, 517 F. Supp. 2d 111, 117 (D.D.C. 2007)).

### III. ANALYSIS

At the outset, the Court notes that Eakin has exhausted his administrative remedies and has standing to file suit here. It is undisputed that Eakin submitted, and DoD received, two FOIA requests and that DoD failed to respond within the 20-day statutory deadline. It is further undisputed that Eakin filed an appeal pursuant to DoD's instructions and DoD failed to respond to the appeal. Neither did DoD seek to extend the 20-day deadline under "unusual circumstances" or provide an opportunity to limit the scope of the request or arrange an alternate time frame for processing the request pursuant to 5 U.S.C. § 552(a)(6)(B)(i)-(ii). Since the agency here, DoD, has failed to comply with applicable time limit provisions, Eakin is deemed to have exhausted his administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

The Court will consider plaintiff Eakin's motion for summary judgment and defendant DoD's cross-motion for summary judgment separately.

#### A. Defendant's Cross-Motion for Summary Judgment Will Be Denied

As stated above, the Court first addresses the DoD's Cross-Motion for Summary Judgment on the grounds that reviewing responsive documents would place an unreasonable burden upon the DoD.

In the government's own words, "the most problematic aspect of Eakin's request is not that the DoD is totally unable to find the materials requested; it knows this information is within

9

approximately 4.2 terabytes of data, but it is the broad scope of the request." Def.'s Cross-Mot for Summ. J. 6. Further, DoD is argues that the IDPFs are located "in approximately 4.2 terabytes of data that include other sensitive documents," including sensitive information that is not responsive to Eakin's FOIA request. *Id.* at 7. Under the current pace of processing, the DoD estimates that it would take four years for the assigned FOIA Action Officers to complete Eakin's request. Def.'s Cross-Mot. for Summ. J. 5. According to DoD, requiring these employees to spend considerable time over the next four years reviewing those 4.2 terabytes of data to determine which documents are exempt and which may be produced would be unreasonable. *Id.* at 8.

Eakin counters that a broad or burdensome request does not automatically render it *unreasonably* burdensome. Resp. 7, ECF No. 24. "It is the requester's responsibility to frame requests with sufficient particularity to ensure that searches are not unreasonably burdensome, and to enable the searching agency to determine precisely what records are being requested." *Assassination Archives and Research Ctr. v. CIA*, 720 F. Supp. 217, 219 (D.D.C. 1989) (citing *Yeager v. DEA,* 678 F.2d 315 (D.C. Cir. 1982)). "The rationale for this rule is that FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Id.* "The linchpin inquiry is whether the agency is able to determine 'precisely what records [are] being requested.'" *Yeager v. DEA,* 678 F.2d 315, 326 (D.C. Cir. 1982). Thus, according to Eakin, the key factor is the ability of DoD's staff here to ascertain exactly which records he is requesting and locate them. Resp. 7. Because DoD has already ascertained and located the files, and merely needs to review them to omit exempt information, Eakin argues his request is not unreasonably burdensome.

This Court agrees. While plaintiff's FOIA request is broad, the broad nature of the request is warranted given the necessarily broad nature of information that the plaintiff is seeking. The

FOIA request here is particularized to electronic IDPF's or X-Files from World War II, the defense contracts for digital scanning of IDPF's, and the users/agencies with access to those files. Not only that, but DoD has apparently already built a separate drive to contain the IDPF files, downloaded them to a shared drive, and granted security permissions to FOIA Action Officers to review the documents. According to DoD's affidavit testimony, those officers have already processed approximately 32,000 files. Ex. 1, ECF No. 22-2. It appears the most burdensome work is removing recently-created, nonresponsive materials from the files in accordance with FOIA exemptions, rather than ascertaining or locating the responsive documents themselves. That DoD has already identified the cache of data in which the universe of responsive documents is located, segregated it, and begun cataloging documents for release, indicates that the plaintiff's FOIA request is sufficiently particular to enable the DoD to determine precisely what records are being requested.

The DoD notes that Eakin has failed to limit his request to a narrower date range, a set of individuals, or a specific event. Respectfully, Eakin's initial request *was* limited to a narrow event and date range: he requested World War II-era IDPF's. Eakin's request is also necessarily limited to set of individuals: those who were killed during World War II. Further, he limited the request to electronic documents. The Court also notes that FOIA imposes an obligation on the government to reach out to a requester to "provide the person an opportunity to limit the scope of the request so that it may be processed within that time limit or an opportunity to arrange with the agency an alternative time frame for processing the request" if the request cannot be processed within 20 days. 5 U.S.C. § 552(a)(6)(B)(ii). Based on the record before the Court, it seems apparent that plaintiff assumed this would be a relatively simple task, particularly since the request was limited to <u>electronic</u> documents. While the Court understands the need for the government to review the

11

documents before sending 4.2 terabytes of personnel files to a requester, the fact that the DoD utterly failed to even make an attempt to communicate these realities to Eakin is disappointing and frustrating. The Court will not fault the plaintiff here for failing to limit or modify his request when the government could not even be bothered to satisfy its relatively simple obligations under § 552(a)(6)(B)(ii).

Defendant DoD also argues that the length of time required to comply with this request too great. Cross-Mot. for Summ. J. 7-8 (citing *American Federation of Government Employees v. U.S. Department of Commerce*, 907 F.2d 203 (D.C. Cir. 1990) and *Solar Sources v. United States*, 142 F.3d 1033, 1039 (7th Cir. 1998)). In *American Federation*, the D.C. Circuit held that a request for "every chronological office file and correspondent file, internal and external, for every branch office, staff office [etc.]" was unreasonably burdensome because it would require the agency to "locate, review, redact, and arrange for inspection a vast quantity of material" that was unnecessary for the appellant's purpose. 907 F.2d at 209. Similarly, in *Solar Sources*, the Seventh Circuit found that a request which would require eight years to segregate exempt portions from non-exempt portions was unreasonable and unpractical. 142 F.3d at 1039.

With these cases, DoD suggests that the unreasonableness of the burden imposed by a broad search is related to the purpose for which a broad search is made. But that argument cuts against the government here and distinguishes the cases cited above. The records sought here, though broad, are vital to Eakin's stated purpose: to identify the remains of military personnel who perished in World War II POW camps and assist families in arranging for the return of their loved ones for interment in the United States. Plaintiff, and in turn the public, has an interest in the identification of the World War II service members whose deaths may be catalogued by the IDPFs and X-Files contained within the admittedly voluminous (4.2 terabytes) data already identified by

12

the government. Though plaintiff's request for documents related to missing and unidentified veterans from World War II is broad, it is not unreasonably so. Such a determination keeps with the central purpose of FOIA—"to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny"—and the statute's strong presumption towards the disclosure of responsive government documents. *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). The Court can think of few other government programs more solemn and worthy of public scrutiny than those tasked with ensuring that Americans who gave the last full measure of devotion in service to their nation are identified, returned home to their families or communities, and buried with honors.

In short, the Court finds that Eakin's request is sufficiently particular for the government to ascertain and locate the requested documents, and, though broad, the request is not unreasonably burdensome to the DoD. Therefore, defendant's Cross-Motion for Summary Judgment will be denied.

### B. Plaintiff's Motion for Summary Judgment Will Be Granted In-Part and Denied In-Part

The Court next considers plaintiff's motion for summary judgment. ECF No. 16. The plaintiff's substantive requests are that the Court (1) order the defendant to search for any and all responsive documents related to his FOIA request; (2) order the defendant to produce, by a date certain, any and all non-exempt responsive documents and a Vaughn index of any responsive records withheld under claim of exemption; and (3) enjoin the defendant from continuing to withhold any and all non-exempt responsive documents. Compl. 5, ECF No. 1.

As noted above, defendant has already conducted—and partially completed—the search for documents responsive to plaintiff's FOIA request and has consolidated them onto three hard drives. The issue is now whether the DoD must review the considerable volume of documents

13

identified in that search for both exempt and non-responsive material contained within those documents. It would not be in the interest of justice, nor would it help the plaintiff's desire to expediently receive these documents, for the Court to order the Government to conduct the search again. Therefore, plaintiff's Motion for Summary Judgment will be denied insofar as it asks the Court to compel the Government to execute another search.

Plaintiff's request for this order to compel production of the documents is premature. DoD has not yet completed its review of the responsive documents, nor has it articulated any exemptions which would excuse nondisclosure here. But DoD has alluded to the existence of "Personally Identifiable Information" contained within the IDPF's. This suggests the presence of documents exempted from FOIA under Exemptions 6 and 7(c). 5 U.S.C. §§ 552(b)(6)-(7). While production of the entire contents of the hard drives would be relatively simple, this Court declines to order the production of potentially exempt information at this time. This Court will err on the side of protecting the privacy interests of individuals whose private information, such as medical records or home addresses, is potentially contained in those files.

Further, an affidavit from the Chief of AHRC confirms that the agency is still reviewing the files for responsive and nonresponsive documents. The plaintiff's request for the production of a Vaughn index explaining every single redaction or withholding for 4.2 terabytes of responsive documents is therefore also premature. However, the Court recognizes the utility of a Vaughn index for the plaintiff and public to identify potentially incorrect applications of FOIA exemptions, and therefore will compel the DoD to produce a sample Vaughn index for the documents that have already been marked for release. This sample Vaughn index will be comprised of the full list of redactions or withholdings from 100-150 documents of the plaintiff's choosing. Therefore, plaintiff's Motion for Summary Judgment will be denied insofar as it asks the Court to compel the

DoD to produce a comprehensive Vaughn index or enjoin the government from continuing to withhold the documents, but granted insofar as it asks the Court to compel the DoD to produce a Vaughn index generally.

Plaintiff also requests that the Court set a date by which the DoD will be required to produce all non-exempt responsive documents will be granted. A timeline for the schedule of production will be discussed and established in Section D below.

### C. Defendant's Motion for an *Open America* Stay Will Be Granted

Finally, the DoD argued in the alternative that exceptional circumstances exist justifying additional time to process records under FOIA request. 5 U.S.C. § 552(a)(6)(C)(i).

Courts evaluate four conditions that must be satisfied to warrant granting an *Open America* stay: (1) the agency must be burdened with an unanticipated number of FOIA requests; (2) the agency's resources are inadequate to process the requests within the time limits set forth in the statute; (3) the agency must show that it is exercising due diligence in processing the requests; and (4) the agency must show reasonable progress in reducing its backlog of requests.

Given the sheer volume of plaintiff's request, and the large number of other requests the office must process, the Court finds that the first condition necessary to qualify for an *Open America* Stay is satisfied.

Based on the current estimated rate of 63,000 requests processed per year by three FOIA Action Officers working one hour per day, the Government estimates that it will take approximately 3,132 man-hours to complete this FOIA request.[3] If the DoD were to redirect all eight FOIA Action Officers to work only on this request full-time, it would still take the office nearly ten weeks to process this request (to the detriment of all other FOIA requests). It is clear,

---

[3] This calculation is based on the typical year containing 261 federal workdays.

15

that the DoD's resources are inadequate to process the request within the time limits set forth in statute. Therefore, the Court finds that the second condition necessary to grant an *Open America* Stay is satisfied.

Further, based on the affidavit testimony provided regarding the FOIA Action Officers working on this request, the Court finds that DoD is exercising due diligence in responding to the request. The fact that the DoD has already processed over 30,000 IDPFs is evidence in itself of good faith in the review of these documents. Plaintiff has offered no rebuttal to the presumption of good faith other than purely speculative claims about the Government's sinister intent in reviewing these documents and not simply releasing them to him en masse. The Court does not find this claim to be supported by evidence to an extent that rebuts the presumption of good faith. Therefore, the Court finds that the third condition necessary to grant an *Open America* Stay is satisfied.

Finally, the defendant has shown that they are making reasonable progress in reviewing these documents. To order the FOIA Action Officers to increase the rate of review of plaintiff's request would necessarily have an adverse effect on many of the office's 6,000 other FOIA requests. While four years is a significant period of time, plaintiff's FOIA request has an equally significant number of responsive documents. Therefore, the Court finds that the fourth condition necessary to grant an *Open America* Stay is satisfied. Accordingly, the DoD is entitled to additional time to respond to Eakin's request.

However, plaintiff here will not be ordered to sit on his hands for four years only to be forced to come back to court and argue over DoD's application of the FOIA exemptions. As noted above, this case would have been largely avoided had the parties communicated regularly. Therefore, in addition to the sample Vaughn index described above, the DoD will be required to

provide a semi-annual production to Eakin, as outlined in their Motion for an *Open America* Stay. Such semi-annual production will be accompanied with its own respective Vaughn index. The Court will order the parties meet and confer regarding the production schedule. The Government will be required to submit updated estimates of the amount of time it will take to complete the review of the 4.2 terabytes of data along with each semi-annual production.

In sum, the Court finds that the four conditions necessary to grant an *Open America* Stay are satisfied. Therefore, defendant's Motion in the Alternative for an *Open America* Stay will be granted.

### D.     Release Schedule

As stated above, the Government will be required to comply with a semi-annual production of documents. The first date of release will be 90 days from the filing of the Order accompanying this Memorandum Opinion, unless the parties agree to a separate schedule following their conference. Semi-annual production will follow until the final release date. Given the Government's estimates and progress thus far, the final release date will be February 1, 2021. In addition to the semi-annual production, the DoD will be ordered to produce all previously withheld non-exempt responsive documents within 90 days from the filing of the Order accompanying this Memorandum Opinion.

### IV.    CONCLUSION

Plaintiff's Motion for Summary Judgment will be granted insofar as the Government must produce any and all non-exempt responsive documents by the dates outlined above, release any previously withheld non-exempt responsive documents by the dates outlined above, and create a sample Vaughn index as described above. Defendant's Cross-Motion for Summary Judgment will

be denied insofar as it compels the Government to execute a second search, and that it compels the Government to produce a full Vaughn index.

Defendant's Cross-Motion for Summary Judgment will be denied.

Defendant's Motion in the Alternative for an *Open America* Stay will be granted.

A separate Order shall issue.

*Royce C. Lamberth*
Royce C. Lamberth
United States District Judge

DATE: 8/2/17