UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOHN EAKIN, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | No. SA-16-CV-972-RCL |
| | § | |
| UNITED STATES DEPARTMENT | § | |
| OF DEFENSE, | § | |
| | § | |
| *Defendant.* | § | |

## DEFENDANT'S MOTION TO DISMISS OR,
## IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant United States Department of Defense (DoD), by and through the United States

Attorney for the Western District of Texas, respectfully moves the Court to dismiss Plaintiff's

Freedom of Information Act (FOIA) lawsuit for lack of subject-matter jurisdiction under Rule

12(b)(1). Plaintiff's lawsuit challenged only the timeliness of DoD's response to his FOIA

requests. DoD has now produced responsive records in compliance with the Court's *Open*

*America* orders. Accordingly, Plaintiff's claims are moot.

In the alternative, DoD requests that the Court grant summary judgment to the agency

under Rule 56. Plaintiff's motion identifies only two issues in dispute. First, must DoD produce

IDPFs from the Korean War in response to Plaintiff's request for World War II era files? Second,

must DoD produce "charge-out sheets" that document files transferred prior to digitization in

response to Plaintiff's request for IDPFs that exist in digital or electronic format? The answer to

both questions is "No." Accordingly, summary judgment is appropriate.[1]

---

[1] DoD intends for this filing to also serve as its substantive response to Plaintiff's Motion for
Partial Summary Judgment (ECF No. 141). DoD is filing a separate one-page opposition to
Plaintiff's motion that adopts by reference the arguments set forth below.

## BACKGROUND

This litigation arises out of Plaintiff's FOIA requests for copies of "all World War II era Individual Deceased Personnel Files (IDPF's) … which exist in any digital or electronic format." *See* ECF No. 111 at ¶¶ 9–10, 13, 16. At the time Plaintiff submitted his initial request in May 2016, a DoD contractor had digitized IDPFs for World War II personnel whose last names began with the letters A through L. *See* ECF No. 53 at 2 (citing ECF No. 48 at 3). DoD could not release these files to Plaintiff without undertaking a manual review to prevent possible disclosure of personally identifiable information. *See* ECF No. 22 at 4–5; *see also id.* at 10 (describing the government's initial efforts to respond to the requests). Accordingly, the Court granted DoD's request for an *Open America* stay and directed it to release responsive records on a semi-annual basis through February 1, 2021. *See* ECF No. 30.

DoD produced more than 192,000 IDPFs between October 2017 and February 2021. *See* ECF No. 86 at ¶ 5. Following the February 2021 deadline, DoD also coordinated with Plaintiff to identify and produce additional A–L IDPFs that may not have been included in the prior releases. Specifically, between March 2021 and February 2022, DoD re-reviewed and re-produced more than 43,000 "F," "G," "I" and "J" IDPFs, *see* ECF No. 98; located, reviewed, and produced approximately 23,000 missing "E," "H," and "L" IDPFs, *see* ECF No. 105; and re-scanned, re-reviewed, and re-produced 418 IDPFs that could not be opened by Plaintiff, *see* ECF No. 108. The agency authorized 410 additional hours of overtime to complete these supplementary reviews. *See* ECF No. 117-1, Gilbert Decl. ¶ 9.

On April 12, 2021, DoD informed Plaintiff and this Court that it had completed the digitization of the remaining M–Z files. *See* ECF No. 94-4. Later that day, Plaintiff submitted another FOIA request for "the balance of the requested files" that were "not previously

produced." ECF No. 94-2. The Court granted Plaintiff's motion for leave to amend his complaint. *See* ECF No. 112. DoD moved for another *Open America* stay to give it time to review and release these additional files. *See* ECF No. 117. The Court granted that request in part and directed DoD to make productions at 30-day intervals with the final release of documents due by July 8, 2023. *See* ECF No. 121.

Between August 2022 and July 2023, DoD produced 164,010 M–Z IDPFs along with 133 replacement files. *See* ECF No. 139 at ¶ 13. DoD has now produced 422,459 IDPFs to Plaintiff (plus 551 rescans of corrupted files), which represents all known World War II IDFPs available in electronic format at the time of the search. *See* Ex. 1, Holm Decl. ¶¶ 6–10 (describing efforts to identify responsive records for review); Ex. 2, Price Decl. ¶¶ 4–16 (describing the review and production of those records).[2] As previously disclosed, DoD withheld records containing correspondence from living relatives requesting information on deceased family members. *See* Price Decl. ¶¶ 17–24. The personal information of these living relatives—and the Army personnel with whom they corresponded—are protected from disclosure under Exemption 6. *See* 5 U.S.C. § 552(b)(6). This Court held that DoD was not required to release such information. *See* ECF No. 53 at 5–7.

For his part, Plaintiff agrees that DoD has now produced "all of the Individual Deceased Personnel Files with last initials of A thru L" and "all of the Individual Deceased Personnel Files with last initials of M thru Z" ***except*** those "pertaining to Korean Conflict deaths" and "charge-out or transferred files." *See* ECF No. 141 at 4–5. These two categories of documents are the only remaining areas of dispute. *See id.* at 5–9. As Plaintiff notes, the parties conferred on

---

[2] In connection with this motion, DoD identified and produced 20 previously withheld documents that it deemed to be releasable. *See* Price Decl. ¶ 13. An index of all FOIA releases in this matter may be found on the next page of this filing. *See* Fig. 1.

multiple occasions and were able to cooperatively resolve all other issues prior to seeking this Court's intervention. *See id.* at 1.

**Figure 1: Index of FOIA Releases**

| Release | Date | Size (GB) | File Count | Description |
|---|---|---|---|---|
| 1 | 01 October 2017 | 712 | 49,938 | A-L |
| 2 | 01 October 2017 | 108 | 9,182 | A-L |
| 3 | 01 December 2017 | 104 | 9,489 | A-L |
| 4 | 17 May 2018 | 288 | 18,259 | A-L |
| 5 | 26 November 2018 | 327 | 3,883 | A-L |
| 6 | 30 May 2019 | 514 | 28,835 | A-L |
| 7 | 01 December 2019 | 379 | 15,978 | A-L |
| 8 | 18 May 2020 | 16 | 1,225 | A-L |
| 9 | 26 October 2020 | 18.36 | 1,674 | A-L |
| 10 | 30 November 2020 | 70.69 | 6,003 | A-L |
| 11 | 28 January 2021 | 528 | 47,400 | A-L |
| 12 | 01 February 2021 | 1.78 | 171 | A-L |
| 13 | 24 March 2021 | 19.56 | 1,591 | I |
| 14 | 05 April 2021 | 117.73 | 9,617 | J |
| 15 | 29 April 2021 | 172 | 13,566 | F |
| 16 | 11 June 2021 | 219 | 18,630 | G |
| 17 | 28 October 2021 | 46.58 | 3,920 | E and L |
| 18 | 09 November 2021 | 227.5 | 19,065 | H |
| 19 | 29 November 2021 | 0.04 | 3 | Supplement |
| 20 | 24 February 2022 | 11 | 418 | Rescans |
| 21 | 03 August 2022 | 424 | 17,226 | M-Z |
| 22 | 01 September 2022 | 590 | 17,966 | M-Z |
| 23 | 04 October 2022 | 514 | 13,502 | M-Z |
| 24 | 04 November 2022 | 516 | 13,122 | M-Z |
| 25 | 01 December 2022 | 476.7 | 13,174 | M-Z |
| 26 | 03 January 2023 | 311.34 | 13,000 | M-Z |
| 27 | 03 February 2023 | 311.28 | 13,067 | M-Z |
| 28 | 07 March 2023 | 310 | 13,013 | M-Z |
| 29 | 03 April 2023 | 320 | 13,004 | M-Z |
| 30 | 03 May 2023 | 395.7 | 13,032 | M-Z |
| 31 | 01 June 2023 | 442.7 | 13,691 | M-Z |
| 32 | 06 July 2023 | 419.4 | 10,346 | M-Z |
| 33 | 28 September 2023 | 1.45 | 20 | Supplement |

## STANDARD OF REVIEW

"A Rule 12(b)(1) motion to dismiss challenges the subject-matter jurisdiction of the federal court." *In re FEMA Trailer Formaldehyde Products Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012). The burden is on the plaintiff to establish jurisdiction and not on the defendant to prove that jurisdiction is lacking. *Id.* "In resolving a motion under Rule 12(b)(1), the district court has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Campos v. United States*, 888 F.3d 724, 729 (5th Cir. 2018) (internal quotation marks omitted).

Under Rule 56, summary judgment is generally appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. "In the FOIA context, however, the traditional standard is modified because the threshold question in any FOIA suit is whether the requester can even see the documents the character of which determines whether they can be released." *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010) (internal quotation marks omitted). Where the plaintiff challenges the adequacy of an agency's search, the government is entitled to summary judgment if it demonstrates that it "performed a search reasonably calculated to yield responsive documents." *Id.* at 176.

## ARGUMENT

### I.   THE COURT SHOULD DISMISS THIS ACTION AS MOOT.

One ever-present requirement for subject-matter jurisdiction is a live case or controversy. *See Chafin v. Chafin*, 568 U.S. 165, 171 (2013). Even if "a dispute was very much alive when suit was filed," it may become moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* (cleaned up). If a case becomes moot prior

to judgment, the court "must dismiss the suit for want of jurisdiction." *Carr v. Saucier*, 582 F.2d 14, 15 (5th Cir. 1978); *see also Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 335 (1980) ("[M]ootness of a case or controversy … ousts the jurisdiction of the federal courts and requires dismissal of the case[.]"); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

The Court should dismiss this action under Rule 12(b)(1) because Plaintiff's claims are moot. When a party alleges that a federal agency has failed to timely respond to a FOIA request (*see* 5 U.S.C. § 552(a)(6)(C)), the case becomes moot—and therefore must be dismissed—once the agency produces the requested records. *See Voinche v. FBI*, 999 F.2d 962, 963 (5th Cir. 1993). Here, Plaintiff alleged that DoD failed to timely respond to its FOIA requests and asked this Court to order DoD to produce responsive documents. Now that DoD has produced documents responsive to Plaintiff's FOIA requests in accordance with this Court's *Open America* orders, there is no longer a live controversy between the parties. *See, e.g.*, *Matthews v. EOUSA*, No. 21-50829, 2022 WL 1055178, at *2 (5th Cir. 2022) ("[W]hen the agencies responded to his requests, Matthews' timeliness claims against them were rendered moot.") (cleaned up); *Calhoun v. FBI*, 546 F. App'x 487, 490 (5th Cir. 2013) ("Calhoun's action was rendered moot when the FBI produced responsive records.").

Plaintiff's argument that the government's productions were inadequate has no bearing on jurisdiction. The operative complaint arises under 5 U.S.C. § 552(a)(6)(C) and alleges that the government "failed to determine whether to comply with Plaintiff's request[s] within the time period provided by FOIA." *See* ECF No. 111 at ¶ 24. "[I]n an action based on § 552(a)(6)(C), the issue is not whether the requestor should have ultimate access to the records." *Voinche*, 999 F.2d at 963 (citing *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 607 (D.C.

Cir. 1976)). Instead, "[t]he issue is under what time constraints administrative agencies should be compelled to act by the court at the behest of a requester." *Id.* (citing *Open America*, 547 F.2d at 607–08). "Because a suit pursuant to § 552(a)(6)(C) challenges only the timeliness of an agency's response, the issue whether the agency's response was adequate is not apposite." *Id.*; *see also Matthews*, 2022 WL 1055178, at *2 ("Matthews did not challenge the adequacy of the agencies' responses in his complaint. Nor could he have: There were no responses to challenge as inadequate when Matthews brought this action.").

## II.   IN THE ALTERNATIVE, THE COURT SHOULD GRANT SUMMARY JUDGMENT TO DOD.

If the Court determines that it retains jurisdiction over this action, it should nevertheless grant summary judgment to DoD. Plaintiff sought all World War II era IDPFs that exist in electronic or digital format. In response, DoD conducted a search of the system of records in which digitized World War II IDPFs are stored. Because that system identifies IDPFs by conflict, the Defense POW/MIA Accounting Agency (DPAA) was able to provide all known and validated electronic World War II files to Army Human Resources Command (AHRC) for review and produce to Plaintiff. DPAA did not provide Korean War files or charge-out sheets, as those materials are not responsive to Plaintiff's FOIA requests.

### A.  DoD Conducted a Reasonable Search.

"The adequacy of an agency's search is measured by a 'standard of reasonableness,' and is 'dependent upon the circumstances of the case.'" *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (citation omitted). When courts "consider the adequacy of a search in response to a FOIA request, the burden is on the agency to demonstrate that it made a 'good faith effort to conduct a search … using methods which can be reasonably expected to produce the information requested.'" *DiBacco v. Dep't of the Army*, 926 F.3d 827, 832 (D.C. Cir. 2019)

(citation omitted); *see also Batton*, 598 F.3d at 176. "The agency can satisfy that requirement with affidavits that provide a detailed description of its search methods." *Negley v. F.B.I.*, 589 F. App'x 726, 729 (5th Cir. 2014); *see also Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995).

DoD made a good faith effort to locate and produce all digitized World War II IDPFs in its possession. DPAA, the DoD component that maintains these World War II IDPFs, identified potentially responsive documents by searching its Case Management System. Holm Decl. ¶ 9. The Case Management System is DPAA's system of record for IDPFs, including those scanned as part of the digitization project referenced in Plaintiff's pleadings. *Id.* ¶ 6; *see also* 10 U.S.C. § 1059(d) (directing DPAA to establish a centralized database of personnel files). The Case Management System identifies the servicemember's name and branch of service for each IDPF, as well as the conflict with which the file is associated. Holm Decl. ¶ 6. DPAA provided to AHRC all known and validated IDPFs from the Case Management System that it identified as World War II files. *Id.* ¶ 9. AHRC then reviewed these files to determine responsiveness and to apply redactions for any FOIA exemptions. Exemption 6 was the only exemption AHRC relied upon to withhold or redact otherwise responsive documents. Price Decl. ¶ 24.

Plaintiff requests a *Vaughn* index of "any records [DoD] believes to be non-responsive or exempt from disclosure under FOIA." *See* ECF No. 141 at 13. But the purpose of a *Vaughn* index is to "permit adequate adversary testing of the agency's claimed right to an *exemption*," *see King v. U.S. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987) (emphasis added), and Plaintiff does not challenge the agency's invocation of Exemption 6. A *Vaughn* index is less useful—and thus unnecessary—when a party challenges only the adequacy of an agency's search and its assertion that wholesale categories of documents are not responsive. *See Freedom Watch, Inc. v. NSA*, 783

F.3d 1340, 1345 (D.C. Cir. 2015) ("[A]n agency may establish the adequacy of its search by submitting reasonably detailed, nonconclusory affidavits describing its efforts."); *Fiduccia v. U.S. Dep't of Justice*, 185 F.3d 1035, 1045 (9th Cir. 1999) (a *Vaughn* index is not required when "the affidavits sufficiently informed plaintiffs and the court what the [agency] refused to disclose and why"); *Church of Scientology of California v. I.R.S.*, 792 F.2d 146, 152 (D.C. Cir. 1986) ("When … a claimed FOIA exemption consists of a generic exclusion, dependent upon the category of records rather than the subject matter which each individual record contains, resort to a *Vaughn* index is futile.").

Although a *Vaughn* index is of limited utility in this case, DoD has attached to this motion a log that identifies the non-responsive documents referenced in its July 7, 2023 status report. *See* ECF No. 139. These documents appear to be Plaintiff's primary concern. *See* ECF No. 141 at 6–7 (finding fault with the "unidentified documents" referenced in the status report and complaining that DoD has offered "no detailed accounting of these records or *Vaughn*" index).[3] As reflected in the log, the withheld documents include blank folders, Korean War files, charge-out sheets, and other non-responsive files. *See* Ex. 3. The Korean War files and charge-out sheets are discussed in greater detail below.

### B.  DoD Reasonably Interpreted Plaintiff's FOIA Requests as Seeking Only World War II IDPFs.

Although "agencies have a 'duty to construe a FOIA request liberally,'… [t]his does not … mean that agencies are prohibited from reasonably interpreting FOIA requests." *See Khatchadourian v. Def. Intel. Agency*, 453 F. Supp. 3d 54, 68 (D.D.C. 2020) (Lamberth, J.) (citation omitted). The agency is required to "read [a FOIA request] as drafted, not as either

---

[3] The government's status report stated that 252 documents were withheld as nonresponsive. As noted above, DoD recently produced 20 of these documents to Plaintiff. Accordingly, the log contains only 232 entries.

agency officials or [the requester] might wish it was drafted." *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984); *see, e.g.*, *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) (affirming summary judgment where agency relied on the "ordinary usage" of the language in a FOIA request); *McClanahan v. Dep't of Justice*, 712 F. App'x 6, 8 (D.C. Cir. 2018) (affirming summary judgment where agency interpreted FOIA request based on context clues in the "opening paragraph and the subject of [the] request as a whole").

DoD reasonably construed Plaintiff's request for copies of "all World War II era Individual Deceased Personnel Files … which exist in any digital or electronic format," *see* ECF No. 94-2 at 1, as excluding Korean War files.[4] Plaintiff's use of the term "World War II era" indicated a desire to limit his request to files pertaining to a "point in time" defined by a particular "memorable or important date or event" (i.e., World War II). *See* "Era," *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/era. The "World War II era" is distinct from the "Korean War era," as reflected in the legislation requiring DPAA to implement a program to account for service members from "World War II during the period beginning on December 7, 1941, and ending on December 31, 1946," and from the "Korean War during the period beginning on June 27, 1950, and ending on January 31, 1955." *See* 10 U.S.C. § 1509(a)(1), (3); *see also* 38 U.S.C. § 101(8), (9) (defining the terms "World War II" and "Korean conflict" using those dates); Holm Decl. ¶ 3 (describing DPAA's mission in terms of temporally defined conflicts). This statute, which is the basis for DPAA's efforts to compile the

---

[4] Since the outset of this litigation, the Court has indicated that it also understood Plaintiff's requests to be limited to World War II. *See* ECF No. 29 at 10–11 ("The FOIA request here is particularized to … World War II[.]"); *id.* at 11 ("[Plaintiff's] request is also necessarily limited to … those [servicemembers] who were killed during World War II."); *id.* ("[Plaintiff's] initial request was limited to a narrow event and date range: he requested World War II-era IDPF's."); *id.* at 12 ("Plaintiff, and in turn the public, has an interest in the identification of the World War II service members whose deaths may be catalogued by the IDPFs[.]").

scanned IDPFs in its Case Management System, defines "eras" for past conflicts that, in the case of World War II and the Korean War, do not overlap.

Plaintiff argues that his broader conception of the "World War II era" as including the postwar years covering the Korean War era is consistent with DoD's FY 2013 Budget, which describes the underlying IDPF digitization project. *See* ECF No. 141 at 7; ECF No. 141-1, Eakin Decl. ¶ 4. The FY 2013 Budget was not referenced in Plaintiff's FOIA requests, however, so there was no reason for DoD to rely on that document to construe the requests. Even if the agency had considered the FY 2013 Budget, that document—like 10 U.S.C. § 1509(a)—treats World War II and the Korean War separately. *See* ECF No. 141-2 at 4 ("The project will [involve] … approximately 405,000 WWII and 37,000 Korean War IDPFs[.]"). Thus, Plaintiff's specific reference to World War II would necessarily have been seen as limiting his requests to the IDPFs from that conflict.[5]

Finally, Plaintiff contends that the inclusion of Korean War IDPFs in the A–L production indicates that DoD "wishes to change the rules midstream." *See* ECF No. 141 at 8. In support of this argument, Plaintiff cites one page from one Korean War IDPF that he concedes is "mis-labeled as WWII." *See* ECF No. 141-1, Eakin Decl. ¶ 12. One mislabeled and inadvertently produced record is hardly evidence of a change in the "rules." The government has *always* interpreted Korean War files as outside the scope of Plaintiff's request. *See, e.g.*, ECF No. 61 at 4–5 (opposing Plaintiff's motion to amend his original complaint and expressing a concern that

---

[5] Plaintiff also asserts that Korean War IDPFs are responsive to his FOIA requests because "the Korean Conflict had its roots in World War II." *See* ECF No. 141 at 7. Of course, many conflicts can be said to have their "roots" in World War II. For example, Congress directed DPAA to identify DoD personnel from the "Cold War during the period beginning on September 2, 1945, and ending on August 21, 1991." *See* 10 U.S.C. § 1509(a). By Plaintiff's logic, the "World War II era" might therefore extend into the 1990s.

Plaintiff will be allowed to "extend this litigation in perpetuity" by incorporating hypothetical future FOIA requests for "IDPFs [from] conflicts outside World War II"). That interpretation is reasonable and consistent with the way the request is drafted.

### C. DoD Reasonably Interpreted Plaintiff's FOIA Requests as Seeking Only IDPFs Available in Digital Format.

DoD's exclusion of charge-out sheets is also justified based on the plain language of Plaintiff's FOIA requests. Specifically, Plaintiff limited his request to "Individual Deceased Personnel Files … which exist in any digital or electronic format." *See* ECF No. 94-2 at 1. Charge-out sheets are not IDPFs in digital or electronic format. They are merely "transfer forms" indicating that the underlying paper IDPF was loaned out prior to digitization. *See* ECF No. 141-3. These charge-out sheets are like the cards once used to track books borrowed from a library. A request for "all e-books about World War II" plainly does not encompass "photocopies of the library cards for hardcopy books about World War II that may never have been digitized." DoD reasonably concluded that a request for "IDPFs available in electronic format" likewise did not encompass charge-out sheets.

Plaintiff counters that "[a]ll records in [DoD's] possession that have been digitized and which ***deal with*** individual deceased personnel are responsive to Plaintiff's FOIA request." *See* ECF No. 141 at 9 (emphasis added); *see also id.* ("Plaintiff has requested … the entire archive of digital files … as well as any other deceased personnel file."). Not true. Plaintiff requested only "[e]lectronic … copies of … World War II era [IDPFs]," along with certain contract files and other documents relating to the electronic IDPFs. *See* ECF No. 94-2 at 1. This is a much narrower request than all electronic records that "deal with" IDPFs, including charge-out files

indicating that DPAA may in fact *lack* an electronic copy of a particular IDPF.[6] Such a broad request would be unworkable; the specificity of Plaintiff's request is one reason this case survived an early summary judgment motion from DoD. *See* ECF No. 29 at 11 ("It appears the most burdensome work is removing recently-created, nonresponsive materials from the files … rather than ascertaining or locating the responsive documents themselves.").

DoD's reading of Plaintiff's FOIA requests is consistent with the Court's construction of those requests. In 2019, Plaintiff sought an order directing DoD to produce newly scanned documents in response to his original FOIA request. *See* ECF No. 46 at 14. The Court denied the request for lack of subject-matter jurisdiction because the scanned IDPFs, unlike the underlying documents, did not exist at the time of Plaintiff's request. *See* ECF No. 53 at 8. As relevant to the current dispute between the parties, the Court explained that Plaintiff "did not request the underlying documents" but instead "specifically requested the digital or electronic scans." *See id.* By the same token, the charge-out sheets—which merely identify when the "underlying documents" may have been borrowed in the past—are not "digital or electronic [IDPF] scans" and thus are not covered by Plaintiff's FOIA requests. Indeed, it is difficult to distinguish the charge-out sheets from the correspondence from family members seeking copies of the underlying IDPFs, which the Court has agreed are non-responsive.

Finally, Plaintiff contends that DoD "acknowledged that Plaintiff's FOIA requests included … charge-out sheets and transfer records" by producing them with the A–L files. *See* ECF No. 141 at 9. Like the overproduction of Korean War files, DoD's inclusion of charge-out sheets in the A–L productions was not a tacit acknowledgement that such files were responsive to

---

[6] If DPAA located an electronic version of an IDPF that was previously "charged out," that file was subject to review and release to Plaintiff. *See* ECF No. 141 at 8 ("[S]ome of these 'charged-out' files have a corresponding file that appears complete[.]").

the FOIA request. Instead, it has always been "the government's contention that [Plaintiff's] FOIA request never sought any information other than the IDPF," and that "other FOIA requests" and "recent correspondence" were "not responsive[.]" *See* ECF No. 22 at 7 & n.4; *see also* ECF No. 26 (arguing that responding to Plaintiff's FOIA request would be unduly burdensome because it would require "searching through 4.2 terabyte of data to find all of the scanned World War II era personnel files" and separate them from "other materials in the data [that] are non-responsive to the FOIA request"). Again, that interpretation is both reasonable and consistent with the way the request is drafted.

* * *

DoD's production efforts have been admittedly imperfect. DoD is aware of the issues with its production of A–L IDFPs, which may have caused some non-responsive records to be produced and some responsive records to be (temporarily) withheld. But DoD took substantial corrective measures after learning of these issues to ensure the agency met its FOIA obligations in this case. *See* ECF No. 102-2, MG Thomas R. Drew Decl. ¶¶ 3–17. Even in preparing this motion, DoD proactively identified and released 20 previously withheld records. Price Decl. ¶ 13. DoD now believes that all responsive records located from searches of DPAA's Case Management System have been produced. *See* Holm Decl. ¶ 10; Price Decl. ¶¶ 15–16.

Even if DoD's search failed to turn up one or more responsive World War II IDPFs—a conclusion that does not follow from the agency's construction of Plaintiff's FOIA request or its unintentional overinclusion of some Korean War files and charge-out sheets in the A–L production—"there is no requirement that an agency [locate] *all* responsive documents." *Nation Magazine*, 71 F.3d at 892 n.7 (emphasis in original). An agency need only undertake "good faith effort" to locate such documents. *Id.* at 890; *see also Schiller v. I.N.S.*, 205 F. Supp. 2d 648, 656

(W.D. Tex. 2002) ("The search by an agency is not required to be 'perfect' but instead must be reasonable.") (citation omitted). Over the past seven years, DoD has done just that. The Court should grant DoD's motion and close this case.

## CONCLUSION

WHEREFORE, DoD respectfully requests that the Court dismiss this action for lack of subject-matter jurisdiction or, in the alternative, enter summary judgment for the government.

Dated: September 29, 2023                    Respectfully submitted,

                                             JAIME ESPARZA
                                             United States Attorney

                              By:    */s/ Thomas A. Parnham Jr.*
                                     THOMAS A. PARNHAM JR.
                                     Assistant United States Attorney
                                     New York Bar No. 4775706
                                     903 San Jacinto Blvd, Suite 334
                                     Austin, Texas 78701
                                     (512) 916-5858 (tel)
                                     thomas.parnham@usdoj.gov

                                     *Attorneys for the United States*
                                     *Department of Defense*